UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH YANCEY and SIMONE GULLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL, AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 4:23-cv-00377<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Joseph Yancey and Simone Gully bring this class action on behalf of themselves and all others similarly situated, by and through undersigned counsel, and for their Complaint against Defendant State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") state and allege as follows:

## INTRODUCTION

1. This is a class action in which Plaintiffs seek to represent State Farm insureds in Missouri who received a payment for the loss of a totaled vehicle where State Farm used valuation reports prepared by Audatex North America, Inc. ("Audatex") to determine the actual cash value ("ACV") of the insured vehicles. Under the terms of its insurance policy, State Farm possesses a duty to pay, and represents that it does pay, the ACV of the insured vehicle when adjusting total-loss claims. State Farm, however, fails to do so—instead, it systemically thumbs the scale against its insureds when calculating the ACV of their vehicles by applying so-called "Typical Negotiation Deductions."

2. Instead of using the internet list price of comparable vehicles, State Farm improperly reduces that list price, and in turn the overall ACV amount, by applying Typical Negotiation Deductions without any documentation that the assumed discount was available on the comparable vehicle in question. These adjustments are based on the factually erroneous assumption that, during the Class period, insureds would be able to negotiate a reduction in the list price of comparable used automobiles, which during the Class period would be highly atypical and contrary to the modern used car industry's market pricing and inventory management practices.

3. Indeed, Defendant applies the Typical Negotiation Deduction without contacting the identified dealerships or sellers or considering whether the online retailer ever discounts its vehicles. Notably, in applying a universal percentage-based Typical Negotiation Deduction, Defendant ignored that, at least since long before the Class Period, used car dealers typically price vehicles to market and do not deviate from that advertised price in cash transactions. It would be *atypical* for – as Defendant wrongly presumes – a used car dealer to routinely price above market with the hopes of duping some customer into agreeing to an above-market deal but with the expectation of probably having to negotiate down from that price. That is simply not how the market works anymore, given, amongst other things, the ubiquity of Internet advertising and shopping and the development of sophisticated pricing tools (for dealers) and comparison tools (for consumers).

4. Moreover, Audatex has access to extensive empirical data – including sales data from state DMV offices – that affirmatively demonstrates that used vehicles typically sell for their internet list price. This data show that cars selling for list price is the most common outcome and that, on average, cars sell for internet list price.

5. The Typical Negotiation Deductions also are contrary to appraisal standards and methodologies that do not permit arbitrary adjustments not based on observed and verifiable data. The impropriety and arbitrariness of State Farm's Typical Negotiation Deductions are further demonstrated by the fact that: (a) they are not applied by the major competitor of State Farm's vendor; and (b) not applied by State Farm to insureds in other states, including California.

6. This pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through the systemic use of these factually erroneous adjustments, which benefits the insurer at the expense of the insured, violates State Farm's policies with their insureds.

## JURISDICTION AND VENUE

7. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiffs and the proposed class members are citizens of the State of Missouri. Defendant is an Illinois Corporation that has its corporate headquarters in Bloomington, IL 61710, and, at all relevant times hereto, was engaged in the business of providing automobile valuation services and software to companies in the State of Missouri.

8. Plaintiffs estimate that there are far more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Typical Negotiation Deductions that were deceptively deducted) claimed by Plaintiffs and the Class are estimated in good faith to exceed $5,000,000.00.

9. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiffs' claims occurred in this District. Defendant transacts business and resides in this District.

**PARTIES**

10. Plaintiff Joseph Yancey resides in St. Louis, Missouri, and is a citizen of the State of Missouri. At all relevant times hereto, Plaintiff Yancey contracted with State Farm for automobile insurance. On or about June 2018, Plaintiff Yancey's insured vehicle was deemed a total loss.

11. Plaintiff Simone Gully resides in St. Charles, Missouri, and is a citizen of the State of Missouri. At all relevant times hereto, Plaintiff Gully contracted with State Farm for automobile insurance. On or about October 28, 2020, Plaintiff Gully's insured vehicle was deemed a total loss.

12. Defendant State Farm Mutual Automobile Insurance Company is an automobile insurance company that owns numerous offices throughout the United States, including the State of Missouri. Defendant State Farm's corporate headquarters are located at One State Farm Plaza, Bloomington, IL 61710. Defendant State Farm conducts business in Missouri through insurance agents and other company personnel.

**FACTUAL ALLEGATIONS**

13. Defendant purports to calculate the ACV of total-loss vehicles via a third-party vendor through a system called "AudaExplore" which provides what it calls an "Autosource Market-Driven Valuation."

14. The AudaExplore system identifies the list price of comparable vehicles, which it then adjusts based on factors such as differences in equipment, packages, and/or condition between the comparable vehicle and the total-loss vehicle. This is a legitimate and proper method for calculating the market value of a vehicle, and Plaintiffs do not contest any of these elements of Defendant's methodology. Indeed, this method accurately identifies the market value of totaled vehicles.

15. State Farm, however, does not stop there: In violation of Missouri law and the Policy obligation to pay ACV, Defendant applies unfounded, false, and capricious Typical Negotiation Deductions.

16. Defendant represents that the Typical Negotiation Deduction reflects that "the selling price may be substantially less than the asking price." But Defendant does not actually base the deduction on conversations with the sellers of the comparable vehicles reflecting that they are willing to sell the vehicle for substantially less than the internet list price. Nor is it based on statistically valid data or calculations. Defendant's Typical Negotiation Deduction is arbitrary, conflicts with data (including DMD data) demonstrating that vehicles typically sell for the internet list price, and is nothing more than an illegitimate and capricious way to undervalue the total-loss vehicles.

17. Plaintiff Yancey owned a 2015 Chevrolet Silverado K1500 that was deemed a total loss on or around June 2018.

18. Like all members of the Class, Plaintiff Yancey made a first-party property damage claim with State Farm.

19. Like all members of the Class, State Farm declared Plaintiff Yancey's vehicle to be a total loss.

20. Pursuant to the terms of his contract, which are, and have been, substantively identical for all members of the putative Class during the Class period, State Farm elected to pay Plaintiff Yancey based on the ACV of his insured vehicle (albeit in an insufficient amount).

21. When calculating its valuations and claims payments, State Farm systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action.

22. As set forth above, this process involves obtaining a "Market-Driven Valuation" report from Audatex (in which State Farm chooses to apply Typical Negotiation Deduction), and then using and relying upon the valuation provided to determine the benefit payment under the insured's policy.

23. State Farm provided a Market-Driven Valuation to Plaintiff Yancey on or around June 13, 2018. *See* Exhibit 1.

24. State Farm valued Plaintiff Yancey's total loss vehicle at $36,106.00. *Id*. at pgs. 1, 3.

25. To arrive at that valuation, the Market-Driven Valuation report provided the prices of four different comparable vehicles advertised for sale online and applied a Typical Negotiation Deduction to each comparable vehicle of (on average) approximately 3%. *Id*. at pgs. 5-6.

26. The use of the Typical Negotiation Deduction to adjust Plaintiff Yancey's total loss claim downward violates the applicable insurance policy, in that these adjustments are unfounded, are factually erroneous, and result in State Farm paying Plaintiff Yancey less than the actual cash value of his total loss vehicle that he was entitled to by contract.

27. Plaintiff Gully sustained damage to her vehicle on October 2, 2020, and submitted a property damage claim. As with Plaintiff Yancey and all Class Members, State Farm determined that the vehicle was a total loss.

28. State Farm provided a Market-Driven Valuation to Plaintiff Gully on or around October 22, 2020. *See* Exhibit 2.

29. State Farm valued Plaintiff Gully's total loss vehicle at $12,636.00. *Id*. at pgs. 1-2.

30. To arrive at that valuation, the Market-Driven Valuation report provided the prices of four different comparable vehicles advertised for sale online and applied a Typical Negotiation Deduction to each comparable vehicle of approximately 6%. *Id*. at pgs. 5-6.

31. The use of the Typical Negotiation Deduction to adjust Plaintiff Gully's total loss claim downward violates the applicable insurance policy, in that these adjustments are unfounded, are factually erroneous, and result in State Farm paying Plaintiff Gully less than the actual cash value of her total loss vehicle that he was entitled to by contract.

32. In truth, State Farm's Typical Negotiation Deduction do not reflect market realities and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition brought about by consumers' ability to comparison shop for used vehicles online. During the Class period, a negotiated discount on a cash purchase would be atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment simply because "the selling price *may* be substantially less than the asking price" is particularly improper in the context of this action. Insureds who have suffered a total loss of their vehicle and need to procure a replacement have limited time to search out the illusory opportunity to obtain the below-market deal State Farm assumes, wrongly, to always exist. Exhibit 1 at p. 5 (emphasis added).

33. Moreover, State Farm's Typical Negotiation Deductions are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles. State Farm begins the process of valuing total loss vehicles using a comparative methodology but improperly deviates from that process by thumbing the scales against its insureds. State Farm documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and makes

7

dollar adjustments accordingly. Plaintiffs do not challenge these documented adjustments in this action. At this stage of the process, State Farm abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining actual cash value. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections and assumptions.

34. The impropriety and arbitrariness of State Farm's Typical Negotiation Deductions are further demonstrated by the fact that Audatex's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply these adjustments. Instead, CCC Intelligent Solutions uses list prices.

35. The impropriety and arbitrariness of State Farm's Typical Negotiation Deductions are further demonstrated by the fact that it does not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in Missouri while not subjecting California claimants to the same negative adjustments.

36. Plaintiffs and each member of the putative Class were damaged by State Farm's application of these Typical Negotiation Deductions because they were not paid the actual cash value, which they would have received had State Farm applied proper methodologies and appraisal standards consistent with their contractual obligations and representations.

37. Were it not for this improper, factually erroneous adjustment, the "Market Value" in each valuation report would have been higher, resulting in a higher payment to insureds for actual cash value. Specifically, were it not for this unfounded, factually erroneous adjustment, State Farm's payment to Plaintiff Yancey would have been $1,128.00 higher, and its payment to

Plaintiff Gully would have been $750.00 higher,[1] before adding the related increase in payments for applicable sales taxes. Said another way, the ACV of Plaintiff Yancey's vehicle was $1,128.00 higher than State Farm represented it was, and the ACV of Plaintiff Gully's vehicle was $750.00 higher than State Farm represented it was.

## CLASS ACTION ALLEGATIONS

38. This action is brought by Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, under the provisions of Rule 23 of the Federal Rules of Civil Procedure, for damages, plus interest, costs, and attorney's fees. Plaintiffs seek certification of this action as a class action on behalf of the following class (the "Class"):

> All persons who made a first-party claim on a policy of insurance issued by State Farm Mutual Automobile Insurance Company to a Missouri resident who, from March 24, 2013 through the date an order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Audatex and the actual cash value was decreased based upon Typical Negotiation Deductions to the comparable vehicles used to determine actual cash value.

39. Excluded from the Class are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers and directors of Defendant and the immediate family members of any such person. Also excluded is any judge who may preside over this cause of action.

40. **Numerosity (Rule 23(a)(1).** The exact number of members of the Class, as herein identified and described, is not known, but it is estimated to be over ten thousand. Accordingly, the Class is so numerous that joinder of individual members herein is impracticable.

---

[1] $1,128.00 is the average of the Typical Negotiation Deduction applied to each of the four comparable vehicles in Plaintiff Yancey's valuation report, and $750.00 is the average of the Typical Negotiation Deductions in Plaintiff Gully's report.

41. **Commonality (Rule 23(a)(2)).** There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class, and the relief sought is common to the entire Class. In particular, the common questions of law and fact include:

   a. Whether State Farm systemically applied Typical Negotiation Deductions or substantially similar adjustments to calculate the value of total loss vehicles;

   b. Whether, through the above referenced practice, State Farm failed to pay its insureds the actual cash value of their total loss vehicles;

   c. Whether, through the above referenced practice, State Farm breached its contracts with its insureds;

   d. Whether Plaintiffs and members of the Class are entitled to compensatory damages in the amount of the invalid adjustment applied to Plaintiffs' and each Class member's valuation.

42. **Typicality (Rule 23(a)(3)).** The claims of the Plaintiffs, who are representative of the Class herein, are typical of the claims of the proposed Class in that the claims of all members of the proposed Class, including the Plaintiffs, depend on a showing of the same acts of State Farm, giving rise to the right of Plaintiffs to the relief sought herein. There is no conflict between the individually named Plaintiffs and other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

43. **Adequacy (Rule 23(a)(4)).** The named Plaintiffs are a representative party for the Class, and are able to, and will fairly and adequately, protect the interests of the Class. The attorneys for Plaintiffs and the Class are experienced and capable in complex civil litigation, insurance litigation, and class actions.

44. **Predominance & Superiority (Rule 23(b)(3)).** Class certification is appropriate under Rule 23 because the common questions of law and fact in this case predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by Class members whose claims are too small and complex to individually litigate against a large corporate defendant.

45. **Particular Issues (Rule 23(c)(4)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

46. Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

47. State Farm's insurance contract with its insureds provides coverage for the total loss of a vehicle on the basis of actual cash value or replacement with another of like kind and quality. Moreover, in determining the actual cash value of a total loss vehicle, State Farm must consider the vehicle's fair market value at the time of loss.

48. Through the use of improper and unfounded Typical Negotiation Deductions in Audatex Market-Driven Valuation reports, State Farm did not consider the fair market value of totaled vehicles, but rather "considered" an arbitrary and capricious amount less than fair market

value, and handled, adjusted, and paid Plaintiffs' claims, and the claims of the members of the Class, in an amount less than the actual cash value required by State Farm's insurance contracts.

49. State Farm's breaches have resulted in a systemic failure to pay the actual cash value of total loss vehicles as required under the contract.

50. State Farm's breaches of contract and violations of law have caused damages to Plaintiffs and members of the Class. Plaintiffs and proposed Class members' damages include the amounts improperly deducted by State Farm from the insureds' payments on the basis of a Typical Negotiation Deduction. Specifically, Plaintiff Yancey's compensatory damages are $1,128.00 and Plaintiff Gully's damages are $750.00, exclusive of the taxes and fees owed on that amount.

## SECOND CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

51. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-45.

52. In addition to the express terms of the contract, the law implies a promise between the parties that they will act in good faith and deal fairly with one another in performing their obligations under the contract and that they will not do anything to prevent or hinder or delay the performance of the contract. Through the use of improper and unfounded Typical Negotiation Deductions in Audatex Market-Driven Valuation reports, State Farm failed to act in good faith and did not deal fairly. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

53. In the alternative to their claims for express breach of contract, Plaintiffs bring this claim for breach of the covenant of good faith and fair dealing.

54. Defendant's application of an arbitrary and statistically invalid Negotiation Adjustment was made in bad faith for no purpose other than to minimize Defendant's payments under its insurance contracts.

55. Moreover, to the extent Defendant possesses some level of discretion in calculating ACV, Defendant did not exercise that discretion in good faith by simply ignoring, excluding, or tossing all data showing transactions where the sold price equaled or exceeded the vehicle's list price.

56. Defendant also did not exercise that discretion in good faith by assuming any difference between sold and list price is attributable to negotiation off the cash price, and not other reasons unrelated to true market price, such as, for example, a loyalty discount or employee discount or friends/family discount, or because the purchaser agreed to finance the purchase through the dealership.

57. Every baseless and arbitrary assumption by State Farm was to the detriment of its insureds and to its own benefit.

58. Even in the light most charitable to Defendant, the Typical Negotiation Deduction was not applied in good faith. Defendant uniformly applied the Typical Negotiation Deduction despite not conducting any independent research or analysis to confirm or test its statistical validity, whether it accurately reflected market value, or whether it was consistent with market forces.

59. Further, State Farm's position is that to challenge its baseless, bare assumptions, which are inconsistent with extensive empirical evidence and actual market forces and reflect State Farm's lack of good faith and fair dealing, insureds must pay for half the appraisal. If State Farm's

position is correct, then the costs of appraisal are the result of its failure to act in good faith and fair dealing.

60. As a result, Plaintiffs and members of the putative Class are entitled to compensatory damages, including all foreseeable damages, along with all penalties, attorneys' fees, costs, expenses, and any other relief allowable by law and/or that this Court deems just and proper.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a) determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as class representatives, and appoint undersigned counsel as Class Counsel;

b) enter an order finding that State Farm's actions described herein constitute a breach of express contract and/or a violation of the covenant of good faith and fair dealing;

c) enter an order enjoining State Farm from basing the valuation and payment of claims on values of comparable vehicles that have been reduced by Typical Negotiation Deductions;

d) enter an order requiring State Farm to pay compensatory damages to Plaintiffs and all members of the putative Class in the amount of 100% of the proceeds that State Farm wrongfully deducted from its insureds' payments in the form of Typical Negotiation Deductions and related underpayment of taxes;

e) award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

f) award reasonable attorneys' fees and costs pursuant to applicable law; and

g)    grant such other legal and equitable relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs and members of the Class hereby request a trial by jury.

Respectfully submitted,

**DRAFAHL LAW FIRM**

/s/ Nolan Drafahl
Nolan Drafahl #64468MO
nolan@drafahl-law.com
1401 S. Brentwood Blvd., Ste. 950
St. Louis, MO 63144
**P:** (314) 300-6260
**F:** (314) 334-8473

**NORMAND PLLC**
Edmund A. Normand (*pro hac vice* forthcoming)
Email: ed@normandpllc.com
Jacob L. Phillips (*pro hac vice* forthcoming)
Email: Jacob.phillips@normandpllc.com
Joshua R. Jacobson (*pro hac vice* forthcoming)
Email: jjacobson@normandpllc.com
Email: ean@normandpllc.com
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: (407) 603-6031
Facsimile: (888) 974-2175

**CARNEY BATES & PULLIAM, PLLC**
Joseph Henry (Hank) Bates, III (*pro hac vice* forthcoming)
Tiffany Wyatt Oldham (*pro hac vice* forthcoming)
Lee Lowther (*pro hac vice* forthcoming)
519 W. 7th St.
Little Rock, AR 72201
Tel: (501) 312-8500
Fax: (501) 312-8505
hbates@cbplaw.com
toldham@cbplaw.com
jwindley@cbplaw.com

*Counsel for Plaintiffs and the Proposed Class*